## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

FOLASHADE O.,

        Petitioner,

v.

CAPTAIN TROY SCHILLING, *in his official capacity as Jail Administrator, Crow Wing County Jail*; DAVID EASTERWOOD, *in his official capacity as Field Office Director of the St. Paul Field Office, Enforcement and Removal Operations, U.S. Immigration & Customs Enforcement*; DAVID J. VENTURELLA,[1] *in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement*; THE DEPARTMENT OF HOMELAND SECURITY; MARKWAYNE MULLIN, *in his official capacity as U.S. Secretary of Homeland Security*; and TODD BLANCHE, *in his official capacity as Acting Attorney General of the United States*,

        Respondents.

Case No. 26-cv-2705 (LMP/DTS)

## ORDER GRANTING IN PART HABEAS PETITION

---

Rachel M. Engebretson, **Engebretson Law Firm, P.A., Blaine, MN**, for Petitioner.

Jaymarie A. Miranda Mendoza, **United States Attorney's Office, Minneapolis, MN**, for Respondents.[2]

---

[1]     David J. Venturella is substituted in place of Todd M. Lyons pursuant to Federal Rule of Civil Procedure 25(d).

[2]     When used in this Order, "Respondents" or "Government" refer to the federal officials named as Respondents. Respondent Troy Schilling, the Administrator of the Crow Wing County Jail, has not participated in these proceedings.

Petitioner Folashade O.[3] brings a petition for a writ of habeas corpus, challenging both the legality of her detention and the procedures by which the Government seeks to remove her to a third country. ECF No. 5. Although Folashade has not met her burden of showing her detention is unlawful, she is entitled to greater procedural protections if the Government seeks to remove her to a third country. Accordingly, her petition is granted in part.

## BACKGROUND

Folashade is a native and citizen of Nigeria who has lived in the United States for over 25 years. ECF No. 5 ¶ 4. Apart from a traffic ticket in 2014, she has remained law-abiding during her time in the United States. ECF No. 8-2 at 2. In June 2006, Folashade was ordered removed from the United States after overstaying her visitor visa. ECF No. 5 ¶ 64; ECF No. 8-3. However, Folashade was granted withholding of removal to Nigeria. ECF No. 8-3. Eventually, Folashade was released on an Order of Supervision ("OSUP"). ECF No. 5 ¶ 5.

On May 18, 2026, Immigration and Customs Enforcement ("ICE") determined that Folashade could be removed to Ghana pursuant to a "Third Country National" mission. ECF No. 8 ¶ 5. ICE indicates that it has coordinated with "the appropriate governmental and operational entities regarding [Folashade's] placement on the scheduled mission." *Id.* On May 19, 2026, ICE officers arrested Folashade and served her a notice of revocation of

---

[3] The Court uses the petitioner's first name throughout this order to comport with this District's practice of using only the first name and last initial of any nongovernmental parties in immigration cases. No disrespect is intended in doing so.

her OSUP.  ECF No. 5 ¶ 6; ECF No. 8-4.  The notice states that Folashade's OSUP was revoked pursuant to 8 C.F.R. § 241.4(l) because her "case is under review for removal to an alternate country."  *Id.* at 1.  The notice further states that her removal "is scheduled to occur on or before May 28, 2026."  *Id.*  That same day, ICE conducted an informal interview with Folashade, at which she declined to make a statement.  ECF No. 8-5.  Since her arrest, Folashade has been in custody at the Crow Wing County Jail in Brainerd, Minnesota.  ECF No. 5 ¶ 2.

Folashade filed a petition for a writ of habeas corpus on May 21, 2026, ECF No. 1, and filed an amended petition the next day, ECF No. 5.  The amended petition alleges that Folashade's detention violates her due process rights, federal laws and regulations governing revocation of an OSUP, and federal laws and regulations governing third-country removals.  *Id.* ¶¶ 99–140.  As a remedy, Folashade seeks her release from immigration detention and an injunction against removal to a third country unless certain procedural protections are satisfied.  *Id.* at 38–39.  The Court ordered the Government to respond to Folashade's amended petition no later than May 29, 2026, with any reply from Folashade due by June 5, 2026.  ECF No. 6.  Both the Government and Folashade timely provided this briefing.[4]  ECF Nos. 7, 13.

## ANALYSIS

"Congress has granted federal district courts, 'within their respective jurisdictions,' the authority to hear applications for habeas corpus by any person who claims to be held

---

[4]      The Court permitted Folashade to file a late revised reply brief.  ECF No. 12.

'in custody in violation of the Constitution or laws or treaties of the United States.'" *Rasul v. Bush*, 542 U.S. 466, 473 (2004) (quoting 28 U.S.C. § 2241(a), (c)(3)). The protections of habeas corpus extend to those in immigration detention. *See INS v. St. Cyr*, 533 U.S. 289, 305–06 (2001).

## I.      Revocation of OSUP

Once ICE releases a noncitizen on an OSUP, federal regulations provide the circumstances under which ICE may re-detain that noncitizen. This Court has previously considered the framework to analyze an OSUP revoked pursuant to 8 C.F.R. § 241.13(i). *See Roble v. Bondi*, 803 F. Supp. 3d 766, 771 (D. Minn. 2025). And both the Government's and Folashade's briefing refers to 8 C.F.R. § 241.13 as justifying the revocation of Folashade's OSUP. ECF No. 7 at 2; ECF No. 13 at 10–18. But the record reflects that the Government invoked a different regulation—8 C.F.R. § 241.4(l)—when it revoked Folashade's OSUP. ECF No. 8-4 at 1.

Both sections 241.4 and 241.13 of Title 8 of the Code of Federal Regulations govern the release of noncitizens under a final order of removal. *See Saengnakhone S. v. Noem*, No. 25-cv-4775 (ECT/LIB), 2026 WL 34132, at *3 (D. Minn. Jan. 6, 2026). 8 C.F.R. § 241.4 is the "broader provision" which applies to all noncitizens under a final removal order *unless* the Government makes a specific determination at the time of release that there is no significant likelihood of removal in the reasonably foreseeable future, in which case 8 C.F.R. § 241.13 governs. *See Quan v. Bowen*, No. 5:25-cv-02546-HDV-PVC, 2025 WL 3691858, at *4 (C.D. Cal. Nov. 14, 2025) (citing 8 C.F.R. § 241.13(b)(1)). The record is sparse as to why—and under which section—Folashade was first released on an

OSUP after her removal order in 2006 because neither party has submitted Folashade's OSUP into the record. All the Court has to go on is the notice revoking Folashade's OSUP, which indicates that the OSUP was revoked pursuant to 8 C.F.R. § 241.4(l). ECF No. 8-4 at 1. Because nothing in the record reflects that the Government has previously determined that there is "no significant likelihood" of removing Folashade in the "reasonably foreseeable future," the Court concludes that the revocation procedure in 8 C.F.R. § 241.4(l) applies.[5] *See* 8 C.F.R. § 241.13(b)(1) (explaining that 8 C.F.R. § 241.4(l) applies to the detention of a noncitizen ordered removed "unless [the Government] makes a determination under this section that there is no significant likelihood of removal in the reasonably foreseeable future").

8 C.F.R. § 241.4(l) provides that an OSUP may be revoked when, relevant here, an "Executive Associate Commissioner" or "district director" determines in an "exercise of discretion" that "[i]t is appropriate to enforce a removal order." 8 C.F.R. § 241.4(l)(2)(iii). Upon revocation of the OSUP, the noncitizen must be "notified of the reasons for revocation," and must be provided "an initial informal interview promptly after his or her return to [immigration] custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification."[6] 8 C.F.R. § 241.4(l)(1).

---

[5] Folashade has arguably abandoned any claim predicated on illegal detention under 8 C.F.R. § 241.4(l) given that her reply briefing only argues the merits of a challenge under 8 C.F.R. § 241.13—even after the Government submitted the notice revoking her OSUP under 8 C.F.R. § 241.4(l). Because 8 C.F.R. § 241.4(l) was invoked in Folashade's petition, however, the Court elects to consider the merits of her claim.

[6] Courts have largely concluded that the revocation procedures described in 8 C.F.R. § 241.4(l)(1) apply to revocations conducted under 8 C.F.R. § 241.4(l)(2). *See Grigorian v.*

As an initial matter, ICE complied with the procedural components of 8 C.F.R. § 241.4. On the day she was arrested, ICE provided Folashade with a notice explaining that her OSUP was revoked because her case was "under review for removal to an alternate country," and that removal was "scheduled to occur on or before May 28, 2026." ECF No. 8-4; *see* 8 C.F.R. § 241.4(l)(1) (requiring that a noncitizen "be notified of the reasons for revocation of his or her release"). This notice is tailored to Folashade's individual circumstances and is not mere "boiler plate language" that fails to provide her with adequate notice of the reasons for her re-detention. *See Herrera Castro v. Woosley*, No. 4:26-cv-47-RGJ, 2026 WL 1507758, at *4 (W.D. Ky. May 29, 2026) (citation omitted) (collecting cases). ICE also afforded Folashade an opportunity to respond to the reasons identified in the revocation notice on that same day, at which Folashade declined to make a statement. ECF No. 8-5; *see* 8 C.F.R. § 241.4(l)(1) (requiring an informal interview "promptly" after the noncitizen's return to custody). And, although Folashade alleges that her OSUP was revoked by an official who lacked authority to do so, ECF No. 5 ¶¶ 114, 121, the record reflects otherwise. An "Executive Associate Commissioner" or "district director" may revoke an OSUP under 8 C.F.R. § 241.4(l)(2). But these terms are anachronistic: 8 C.F.R. § 241.4 refers to position titles under the Immigration and Naturalization Service, an agency made defunct by the Homeland Security Act of 2002. *See Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 160 (W.D.N.Y. 2025). However, the Department of Homeland Security's post-2002 regulations explain that the position

---

*Bondi*, No. 25-cv-22914-RAR, 2025 WL 2604573, at *6–7 (S.D. Fla. Sept. 9, 2025) (collecting cases).

6

previously referred to as "district director" now refers to the position of "field office director." 8 C.F.R. § 1.2; *see Gazazyan v. Bondi*, No. 5:25-cv-02599-SRM-DTB, 2025 WL 3898484, at *5 (C.D. Cal. Nov. 7, 2025). Here, the revocation notice was signed by David B. Easterwood, an Acting Field Office Director. ECF No. 8-4 at 2. Because a "field office director" is a "district director" under 8 C.F.R. § 241.4(l)(2), Folashade's OSUP was revoked by an authorized immigration official. *See* 8 C.F.R. § 1.2.

That leaves Folashade's substantive argument that her re-detention is unlawful because there is no change in circumstances that renders her removal to a third country reasonably foreseeable. ECF No. 5 ¶¶ 7, 69, 101, 116. That argument might have merit had the Government revoked Folashade's OSUP pursuant to 8 C.F.R. § 241.13(i), under which the Government bears the burden of demonstrating "changed circumstances that make removal significantly likely in the reasonably foreseeable future." *Roble*, 803 F. Supp. 3d at 772. But Folashade's OSUP was revoked pursuant to 8 C.F.R. § 241.4(l), ECF No. 8-4, under which the Government need only show that, in an "exercise of discretion," it is "appropriate to enforce a removal order," 8 C.F.R. § 241.4(l)(2)(iii). Unlike 8 C.F.R. § 241.13(i), which requires the Government to prove that a very specific change in circumstances has occurred, 8 C.F.R. § 241.4(l) grants the Government "broad discretion" to revoke an OSUP and does not require a specific finding of changed circumstances. *Tran v. Baker*, No. 1:25-cv-01598-JRR, 2025 WL 2085020, at *4 (D. Md. July 24, 2025); *see, e.g.*, *Fuentes v. Ripa*, No. 3:26-cv-134-MMH-PDB, 2026 WL 717982, at *3 (M.D. Fla. Mar. 16, 2026) (describing the Government's "wide discretion to detain, release, or revoke an alien's supervision" under 8 C.F.R. § 241.4(l)); *Morales Sanchez v. Bondi*,

No. 5:25-cv-02530-AB-DTB, 2025 WL 3190816, at *3 (C.D. Cal. Oct. 3, 2025) (explaining that the Government is "broadly authorized to exercise its discretion to revoke [a noncitizen's] release pursuant to 8 CFR § 241.1(l)(1), and 8 CFR § 241.4(l)(2)").

When the Government has taken steps to effectuate a long-delayed removal, ICE may exercise its discretion to revoke an OSUP pursuant to 8 C.F.R. § 241.4(l) to enforce the removal order. *See Tran*, 2025 WL 2085020, at *4 (finding revocation under 8 C.F.R. § 241.4(l) permissible when ICE has submitted the noncitizen's case to her native country for issuance of a travel document); *Doe v. Easterwood*, No. 25-cv-196 CJW-KEM, 2025 WL 4093531, at *8 (N.D. Iowa Dec. 5, 2025) (finding revocation under 8 C.F.R. § 241.4(l) permissible when ICE was in the process of securing a travel document for removal). Here, the Government has taken steps to effectuate Folashade's removal to a third country: it accepted her into a "Third Country National" mission for removal to Ghana and is presently coordinating with "the appropriate governmental and operational entities regarding [Folashade's] placement on the scheduled mission." ECF No. 8 ¶ 5. Indeed, the notice of revocation contemplated that Folashade's removal would occur "on or before May 28, 2026," suggesting that the Government believed that Folashade's removal would occur imminently.[7] ECF No. 8-4 at 1. Folashade cites no authority suggesting that

---

[7] The Court recognizes that Folashade was not removed from the United States by May 28, 2026, but it is unclear whether that is a result of the Government's inability to remove her, or the Court's May 28, 2026 order prohibiting Folashade's removal from this District until her habeas petition was adjudicated. *See* ECF No. 3.

revocation of an OSUP under 8 C.F.R. § 241.4(l)(2)(iii) is inappropriate under similar circumstances.[8]

That said, while the Government's discretion is broad, it is not boundless. It may very well be inappropriate to revoke an OSUP if the Government has taken no steps to effectuate a long-delayed removal, or if the petitioner demonstrates that the chances of that removal are vanishingly small. That is not the case here, however. Accordingly, the Court concludes that the Government lawfully revoked Folashade's OSUP pursuant to 8 C.F.R. § 241.4(l)(2)(iii) and, consequently, Folashade's constitutional, statutory, and regulatory claims premised on this argument fail.[9]

## II.     Third-Country Removal

Folashade's remaining claims challenge her proposed removal to Ghana. In essence, she alleges that the Government is seeking to remove her to a third country without providing her the opportunity to invoke the protections required by the third-country

---

[8]     Folashade requests an evidentiary hearing on her petition, asserting that her petition relies on "disputed facts." ECF No. 13 at 25–26. The only relevant fact that is arguably disputed is whether Folashade was initially released on an OSUP under 8 C.F.R. § 241.4 or 8 C.F.R. § 241.13. But Folashade (and the Government) had the opportunity to enter the OSUP into the record but did not. Given that Folashade did not submit the OSUP with the petition or during briefing on the petition, and that her briefing does not even recognize that her OSUP was revoked under 8 C.F.R. § 241.4(l), the Court does not believe an evidentiary hearing is necessary or appropriate to resolve this petition.

[9]     That is not to say that Folashade may be detained indefinitely. Within approximately three months of revoking the OSUP, ICE must conduct a custody review, which entails notification to Folashade, the scheduling of an interview, and "a final evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release." 8 C.F.R. § 241.4(l)(3). And if Folashade's detention extends to six months without removal in sight, she may bring a claim pursuant to *Zadvydas v. Davis*, 533 U.S. 678 (2001).

removal statute, the Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA"), and the United Nations Convention Against Torture ("CAT").  ECF No. 5 ¶¶ 123–40.  She brings three counts related to this argument: a statutory claim under the Immigration and Nationality Act, *see id.* ¶¶ 123–30; a statutory claim under FARRA, *see id.* ¶¶ 131–34; and a due process claim, *see id.* ¶¶ 135–40.

Although the Government responds to Folashade's statutory claims, it does not address Folashade's due process claim as it relates to third-country removal.  *Compare id.* ¶¶ 135–40, *with* ECF No. 7 at 10–12 (addressing Folashade's third-country removal statutory claims but failing to address the due process claim).  That alone warrants relief for Folashade on this claim.  *See Estephanny P. v. Bondi*, No. 26-cv-198 (ECT/JFD), 2026 WL 115067, at *1 (D. Minn. Jan. 15, 2026) (holding that the Government "waived any challenge" to a habeas petitioner's arguments by failing to respond to the arguments in its briefing).  That is particularly so because Folashade's due process claim is "far from frivolous."  *Jaime D. B. v. Easterwood*, No. 26-cv-891 (MJD/DTS), 2026 WL 578754, at *3 (D. Minn. Feb. 25, 2026), *report and recommendation adopted*, 2026 WL 592854 (D. Minn. Mar. 2, 2026).  Indeed, courts around the country have determined that the procedures currently provided by the Government to noncitizens like Folashade to challenge their removal to a third country on fear-based grounds are constitutionally inadequate.  *See Romero v. Ladwig*, No. 25-1106-JWD-EWD, 2026 WL 1146824, at *13 (M.D. La. Apr. 21, 2026); *Mohammad J. N. v. Mullin*, No. 26-cv-1963 (MJD/DJF), ECF No. 15 at 16–17 (D. Minn. Apr. 15, 2026); *Mendoza Palacios v. Mullin*, No. 26-cv-648-ABA, 2026 WL 933319, at *5 (D. Md. Apr. 7, 2026); *Mbaba v. Perez*, No. 5:26-cv-70,

2026 WL 917484, at *9 (S.D. Tex. Feb. 13, 2026); *Le v. Bondi*, No. C25-2454-KKE, 2026 WL 309239, at *7 (W.D. Wash. Feb. 5, 2026); *Sagastizado v. Noem*, 802 F. Supp. 3d 992, 1009 (S.D. Tex. 2025).  In the absence of a specific objection from the Government on Folashade's due process claim in Count 7, the Court concludes that Folashade is entitled to relief on that claim.[10]

Folashade seeks several forms of relief to remedy the due process violation, including: (1) giving her written notice of removal to a third country 10 days prior to the removal; (2) providing her with a reasonable fear interview if she states a fear of removal; (3) reopening her removal proceedings if she states a reasonable fear of removal; and (4) if the Government determines that she fails to state a reasonable fear of removal, providing her 15 days to file a motion to reopen her removal proceedings.  ECF No. 5 at 39.  Again, the Government offers no objection to this proposed framework, and courts evaluating habeas petitions like Folashade's have adopted a similar framework to ameliorate the procedural due process infirmities resulting from the Government's current procedures.

---

[10]     Although the parties do not raise the issue of curtailment of the Court's jurisdiction under 8 U.S.C. § 1252(g), to the extent the statute applies, the Court concludes that it has subject-matter jurisdiction to grant relief to Folashade because her claim presents a "purely legal question." *Jama v. Immigr. & Naturalization Serv.*, 329 F.3d 630, 632 (8th Cir. 2003). Specifically, Folashade's due process claim does not require the Court to evaluate anything about her particular factual circumstances, but rather asks whether, as a matter of law, the Government's procedural protections provided to noncitizens being removed to a third country comport with the Due Process Clause. Accordingly, the due process claim presents an "abstract question and answering it does not require consideration of [Folashade's] circumstances, apart from merely recognizing the fact (necessary for standing) that [she] fac[es] imminent removal" to a third country. *Nicholas L. L. v. Barr*, No. 19-cv-02543 (ECT/TNL), 2019 WL 4929795, at *5 (D. Minn. Oct. 7, 2019).

*See Pacheco v. Baltazar*, No. 26-cv-01176-PAB, 2026 WL 1223414, at \*4 (D. Colo. May 5, 2026); *Kumar v. Wamsley*, 817 F. Supp. 3d 1059, 1073 (W.D. Wash. 2025); *Y.T.D. v. Andrews*, No. 1:25-cv-01100 JLT SKO, 2025 WL 2675760, at \*9–12 (C.D. Cal. Sept. 18, 2025). Consistent with the above cases, the Court concludes that Folashade's "proposed process is proportional to the need to ensure a reasonable opportunity to raise and pursue" a fear-based claim of removal to Ghana. *Kumar*, 817 F. Supp. 3d at 1073 (citation omitted) (internal quotation marks omitted).

Applying that procedure here, the Government has now notified Folashade that it seeks to remove her to Ghana. Accordingly, the Government must provide Folashade with a reasonable fear interview if she states a fear of removal within 10 days of this Order. *See* 8 C.F.R. § 208.31. If the Government determines that Folashade states a reasonable fear of removal to Ghana, then the Government must move to reopen her removal proceedings for her to present a claim for withholding of removal or deferral of removal under the CAT to an immigration judge. If the Government determines that she does not have a reasonable fear of removal to Ghana, then the Government must allow Folashade 15 days to file a motion to reopen her removal proceedings before removing her.[11]

---

[11] To the extent that Folashade requests that the Court impose these procedures on *any* third-country removal to which Folashade may be subject, the Court declines to do so, as any challenge to removal to a country other than Ghana is not ripe at this time. *See Tran v. Bondi*, No. C25-01897-JLR, 2025 WL 3140462, at \*4 (W.D. Wash. Nov. 10, 2025).

## CONCLUSION

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT**

**IS HEREBY ORDERED THAT:**

1.  Folashade O.'s Amended Petition for a Writ of Habeas Corpus (ECF No. 5) is **GRANTED in part**;

2.  The Government is **ENJOINED** from removing Folashade to Ghana without providing her with meaningful notice and opportunity to assert a fear-based claim before an immigration judge.  Specifically:

    a.  The Government must provide Folashade with a reasonable fear interview if she states a fear of removal within 10 days of this Order;

    b.  If the Government determines that Folashade states a reasonable fear of removal to Ghana, then the Government must move to reopen her removal proceedings for her to present a claim for withholding of removal or deferral of removal under the CAT to an immigration judge;

    c.  If the Government determines that Folashade does not state a reasonable fear of removal to Ghana, then the Government must allow Folashade 15 days to file a motion to reopen her removal proceedings before removing her; and

3.  In all other respects, Folashade's Amended Petition for a Writ of Habeas Corpus (ECF No. 5) is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: June 16, 2026

*s/Laura M. Provinzino*
Laura M. Provinzino
United States District Judge

13